

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| DAWN J. SHEGOG, as Personal Representative of the Estate of BOBBY DEVIER JONES, JR., | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. 8:03-3166-HFF |
| ROBERT E. DALY, Individually; DIRECTOR OF THE ANDERSON COUNTY DETENTION CENTER; TERESA C. LANTZ, Individually, COMMISSIONER OF THE CONNECTICUT DEPARTMENT OF CORRECTIONS; JOSEPH ESPOSITO, MD, Individually; AND JOHN DOE, MD, NOS. 1 AND 2, Individually and/or as agents of the Connecticut Department of Corrections, | § § § § § § § § § § § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND DENYING PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT AND/OR DEFAULT JUDGMENT**

**I.     INTRODUCTION**

This is a Section 1983 and related state claims action. Plaintiff asserts violations of his fundamental constitutional rights during his incarceration in both Connecticut and South Carolina. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367.

Pending before the Court are Defendants Theresa Lantz and Joseph Esposito's (collectively "Defendants") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction

and Plaintiff's motion for entry of default and/or default judgment. Having carefully considered the motions, the responses, the replies, the record and the applicable law, it is the judgment of the Court that the Defendants' motion to dismiss shall be granted and Plaintiff's motion for entry of default and/or default judgment shall be denied.

## II.    FACTUAL AND PROCEDURAL HISTORY

Acting as the personal representative to the estate of Bobby Devier Jones (Decedent), Plaintiff Dawn J. Shegog asserts various claims against Theresa Lantz, Commissioner of the Connecticut Department of Corrections (CDC), and Dr. Joseph Esposito, a physician employed by the CDC.

Decedent, while incarcerated at the CDC in early 2002, was evaluated for what was diagnosed as a left foot plantar wart and/or verruca vulgaris involving his left foot. (Pl's 2d Am. Compl ¶ 9.)  Decedent received treatment of the growth at various times during his CDC incarceration. (Pl's 2d Am. Compl. ¶¶ 10-13.)

At some point after his release from the CDC, Decedent returned to South Carolina where, on or about April 11, 2003, he was detained by the Anderson City Police Department. Pursuant to an outstanding warrant for his arrest on a charge of grand larceny, Decedent was incarcerated at the Anderson County Detention Center (ACDC). (Pl's 2d Am. Compl. ¶ 14.)

On May 2, 2003, after an evaluation at the Anderson Skin and Cancer Clinic, Decedent's left foot mass was diagnosed to be melanocytic neoplasm of undetermined malignant potential. (Pl's 2d Am. Compl. ¶¶ 21-22.)  Despite medical treatment, Decedent died on July 13, 2004.

Plaintiff filed the original Complaint on October 6, 2003, and a motion for and entry of default and/or default judgment against Defendant Lantz on January 25, 2005. Subsequently, on April 18, 2005, Defendants filed a motion to dismiss due to lack of personal jurisdiction.

### III.     STANDARD OF REVIEW[1]

Federal Rule of Civil Procedure 12(b)(2) provides, in relevant part, that

> [e]very defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . lack of jurisdiction over the person.

whether a court procures personal jurisdiction over a non-resident defendant is a question which must be resolved from the facts of each particular case.

As a general rule, the plaintiff bears the burden of demonstrating that personal jurisdiction is properly asserted. *Umbro U.S.A. v. Goner,* 825 F. Supp. 738, 739 (D.S.C. 1993). Since this motion to dismiss comes during the pretrial stage, however, without an evidentiary hearing, Plaintiff need only to establish a *prima facie* showing of jurisdiction to meet her burden of proof. *Mylan Laboratories, Inc., v. Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). In deciding whether Plaintiff has set forth a *prima facie* case of personal jurisdiction, the Court must draw all reasonable inferences arising from the proof and resolve all factual disputes in Plaintiff's favor. *Mylan*, 2 F.3d at 60. Thus, Plaintiff's allegations in her Complaint are accepted as true and are sufficient to make a

---

[1] In light of the Court's ruling on the personal jurisdiction issue, it need not discuss the standard of review as it relates to motions for the entry of default and/or default judgment.

3

determination of personal jurisdiction, though affidavits also may be considered. *Springs Indus., Inc. v. Gasson*, 923 F. Supp. 823, 825 (D.S.C. 1996) (internal citations omitted).

**IV.   CONTENTION OF THE PARTIES**

Defendants contend that Plaintiff has failed to set forth sufficient facts to establish that the Court has personal jurisdiction over Defendants. Defendant also argues that Plaintiff's motion for an entry of default and/or default judgment should be denied.

Plaintiff counters that, as agents of the State of Connecticut's Department of Corrections, Defendants maintained far more than the minimum necessary contact with the State of South Carolina to establish personal jurisdiction. Plaintiff also maintains that judicial economy and the provision of a single convenient forum supports the Court's exercise of personal jurisdiction over Defendants. As to her motion for the entry of default/default judgment, Plaintiff avers that Defendants' default should not mooted by this Court's entertaining their untimely motion to dismiss.

**V.   DISCUSSION**

  *A.   Specific Personal Jurisdiction*

In general, a court may exercise specific personal jurisdiction when a suit arises out of a defendant's activity(ies) within the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984). The determination of specific personal jurisdiction for a non-domiciled defendant involves a two-step process. *ESAB Group, Inc. v. Centricut, LLC*, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

First, the Court must determine whether South Carolina's long-arm statute provides a foundation upon which to assert jurisdiction over the defendants. Second, the Court will look to ascertain whether jurisdiction comports with the notions of fair play and substantial justice as required by due process. *Orangeburg Pecan Co. v. Farmers Inv. Co.*, 869 F. Supp. 351 (D.S.C. 1994).

As to step two, the courts have determined that South Carolina's long-arm statute extends to the constitutional limits presumed by the due process clause.[2] *Magic Toyota v. S.E. Toyota Distrib.*, 784 F. Supp. 306, 310 (D.S.C. 1992). Therefore, the state law analysis will collapse into the constitutional resolution. *ESAB* II, 34 F. Supp. 2d at 328. Accordingly, the Court limits its focus regarding jurisdiction to the due process notions of (1) minimum contacts and (2) fair play and substantial justice. *Int'l Shoe Co. v. Wash.*, 326 U.S. 310 (1945); *ESAB Group v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

---

[2]S.C. long-arm statute states as follows:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent as to a cause of action arising from the person's (a) transacting any business in this State; (b) contracting to supply services or things in the State; (c) commission of a tortious act in whole or part in the State; (d) causing tortious injury or death in this State by an act or omission outside this State if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this State; or (e) having an interest in, using, or possessing real property in this State; or (f) contracting to insure any person, property or risk located within this State at the time of contracting; or (g) entry into a contract to be performed in whole or part by either party in this State; or (h) production, manufacture, or distribution of goods with the reasonable expectation that those goods are to be used or consumed in this State and are so used or consumed.

S.C. Code Ann. § 36-2-803 (Law. Co-op. 1976).

*1.     minimum contacts*

The Court must consider the following factors when called to determine if a defendant has made minimum contacts with the forum state: (1) whether the defendant engaged in activities invoking benefits and protections of the state, *Burger King Corporation v. Rudzewicz*, 471 U.S. 462 (1985); (2) whether the defendant could reasonably anticipate being haled into court in the state, *World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980); and (3) whether the defendant purposefully directed activities to residents of the forum state. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). Without minimum contacts, the Court is unable to adjudicate the action. Since each defendant must meet the due process requirements, the Court will consider Defendants' contacts with South Carolina individually.

*a.     purposeful availment*

In general, the first element of minimum contacts requires the defendant to perform an activity that "purposely avails" herself to draw upon the benefits and protection of the forum state. *Burger King*, 471 U.S. at 476. Stated differently, a defendant will not be subject to jurisdiction in a court as a result of "random" or "fortuitous" contacts. *Vinten v. Jeantot Marine Alliances, S.A.*, 191 F. Supp. 2d 642 (D.S.C. 2002) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). The requirement of contact with the forum state cannot be satisfied with the unilateral activity of those who claim some relationship with the defendant. *Hanson*, 357 U.S. at 253. Contact that specifically results from actions by the defendant creating a substantial connection with the state, however, can satisfy personal jurisdiction. *See Hanson* at 252.

Defendant Esposito is a resident of Connecticut. (Pl's 2d Am. Compl. ¶ 4). He is also licensed as a physician in that state. *Id* at ¶ 4. Plaintiff makes no assertion whether he is licensed

in South Carolina.  Defendant Esposito evaluated Decedent on at least two occasions in early 2002 when Decedent was incarcerated by the CDC.  *Id*.  at ¶ 10.

The record is devoid of any allegations that any contact between Defendant Esposito and Decedent occurred outside Connecticut.  Plaintiff also neglects to set forth any evidence that Defendant Esposito had any other contacts with South Carolina, except as detailed above. Accordingly, it is the opinion of this Court that Plaintiff has failed to demonstrate that Defendant Esposito purposefully availed himself to the benefits and protection of this state.

Defendants Lantz is also a resident of Connecticut.  (Pl's 2d Am. Compl. ¶ 3).  According to Defendant Lantz's affidavit, Decedent was "discharged from Connecticut custody on November 13, 2002, before [Lantz's] appointment as Commissioner."  (Aff. of Theresa Lantz ¶ 6.)  Plaintiff has offered no evidence that Defendant Lantz had any contact with Decedent whatsoever.  Therefore, it is the judgment of this Court that Plaintiff has neglected to establish that Defendant Lantz purposefully availed herself to the benefits and protection of this state.

> b.     *reasonably anticipate being haled into court in a state*

The Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen*, 444 U.S. at 297. Therefore, the second element regarding minimal contacts is met when a defendant could reasonably anticipate being haled into court in the state based on his conduct and connection with the forum state.  *Id*.  Foreseeability alone, however,  fails as a sufficient benchmark for personal jurisdiction. *Id.* at 295.

In *World-Wide Volkswagen*, the Supreme Court stated that, although "[i]t is foreseeable that the purchasers of automobiles sold by World-Wide and Seaway may take them to Oklahoma . . . . 'unilateral activity . . . cannot satisfy the requirement of contact with the forum State.'" *Id.* at 298 (quoting *Hanson*, 357 U.S. at 253).

In the case at bar, Plaintiff claims that Defendants acted under color of South Carolina and Connecticut law in attending to Decedent's medical needs. (Pl's 2d Am. Compl. ¶¶ 46-48.) As it relates to South Carolina and Defendants, the Court is unconvinced.

The alleged acts giving rise to Plaintiff's claim occurred in Connecticut, not South Carolina. Nevertheless, even if it was foreseeable that Defendants' conduct in Connecticut could cause eventual injury in another state, Decedent's "unilateral activity [of moving to South Carolina] . . . cannot satisfy the requirement of contact with the forum State." *Hanson*, 357 U.S. at 253.

Plaintiff claims that "were [Decedent] not on probation in Connecticut, and the request to transfer not made by the Connecticut Defendant, the [Decedent] would not have been present in South Carolina where the final acts and omissions necessary to complete the tort alleged in this action occurred." (Pl's Opp'n Defs.' Mot. at 7-8.)

Plaintiff's assertion is similar to the "stream of commerce" argument applied in various claims throughout jurisprudence. In an attempt to establish personal jurisdiction upon Defendants, Plaintiff argues that Decedent's (1) traveling back to South Carolina after his release from the CDC, and (2) his "continued informal visits with agents of the South Carolina Department of Probation, Parole and Pardon Services instead of the Probation Department of the State of Connecticut," (Pl's Opp'n Defs.' Mot. at 7), somehow conferred personal jurisdiction over Defendants. This is simply not the law.

As already observed, the contact-with-the-forum-state requirement cannot be satisfied by the unilateral activity of those who claim some relationship with the defendant. *Hanson*, 357 U.S. at 253. Moreover, Plaintiff's alleged loss or harm felt in South Carolina does not justify sufficient contacts since "jurisdiction would depend on *plaintiff's* decision about where to establish residence. Such a theory would always make jurisdiction appropriate in a plaintiff's home state, for the plaintiff *always* feels the impact of the harm there." *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 626 (4th Cir. 1997) (emphasis in original).

Accordingly, for the reasons stated above, based on the facts presented in this case, the Court finds Plaintiff has failed to establish that Defendants could reasonably anticipate being haled into court in South Carolina.

### c.    *purposefully directed activities*

The final element of minimum contacts is met when the defendant purposely directs the activities to residents of the forum state, and the resulting liability is directly related to those activities. *See Keeton*, 465 U.S. 770 (1984). "Such activities need not involve physical presence in the state, but must still be 'purposefully directed toward the forum state.'" *ESAB I*, 126 F.3d at 623 (quoting *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 941-46 (4th Cir. 1994)).

Plaintiff contends the State of Connecticut's "requested transfer" of Decedent's probation to South Carolina and "contemplated completion" of Decedent's sentence in this state established minimum contacts to justify personal jurisdiction. (Pl's Opp'n Defs.' Mot. at 6.) The Court is unpersuaded.

These isolated facts, in and of themselves, are insufficient to confer personal jurisdiction over Defendants under either the long arm statute or the Due Process Clause. *Jarrett v. State of N.C.*, 868

9

F. Supp. 155, 157-58 (D.S.C. 1994).[3]  Foreseeability alone fails as a sufficient benchmark for personal jurisdiction. *World-Wide Volkswagen*, 444 U.S. at 295.  Moreover, neither the CDC nor Defendants had the "authority to supervise, transfer or otherwise control the terms and conditions of any inmate released on probation.  That is a matter for the Court Support Services Division . . . a separate branch of government from the [CDC]." (Aff. of Theresa Lantz ¶ 7.)

Finally, Plaintiff contends that "a single contact with this state is sufficient to give the forum personal jurisdiction over a defendant when that contact gives rise to, or figures prominently in, the cause of action under consideration." (Pl's Opp'n Defs.' Mot. at 9.)   The Court agrees.

A "single transaction is a sufficient contact to satisfy this standard if ***it gives rise to the liability*** asserted in the suit." *Hardy v. Pioneer Parachute Co.,* 531 F.2d 193, 195 (4th Cir. 1976) (emphasis added).  In the instant case, however, the requested transfer of Decedent's probation to South Carolina is not the act that gives rise to Plaintiff's claim.  Instead, all of the alleged acts giving rise to Plaintiff's claim occurred during Decedent's incarceration at the CDC, not during Decedent's alleged probation transfer.

---

[3]In *Jarrett*, the plaintiff asserted claims under § 1983 arising out of the defendants' actions in their official and individual capacity as North Carolina licensing board agents. The court held that the defendants' act of mailing the plaintiff's file to a South Carolina attorney was insufficient to assert personal jurisdiction.  The court opined, "this isolated fact, in itself, is insufficient to confer personal jurisdiction over [d]efendants' under either the long arm statute or the Due Process Clause." *Id*. at 157-58.  Furthermore, the court rejected the plaintiff's argument that defendants' "'transacted business in the state and committed a tortious act in whole or in part in this state,' . . . as a result of the mailing of [p]laintiff's file to the South Carolina attorney." *Id.* at 157.  Moreover, the court held that the alleged wrong was committed in North Carolina, and although defendants' act may have procured some impact in South Carolina, this "limited connection" with South  Carolina is insufficient. *Id.* 158.

In sum, as noted herein, there are no allegations that Decedent and Defendant Lantz had any contacts whatsoever, either in Connecticut or in South Carolina. Furthermore, Decedent Plaintiff offers no allegations that Defendant Esposito had any contacts with Decedent in South Carolina. Therefore, the Court is of the opinion that any claim by Plaintiff that Defendants purposefully directed their activities to this state must fail. Accordingly, the Court is unable to find that Plaintiff has alleged a sufficient basis on which this Court can confer specific personal jurisdiction over either Defendant.

### 2. *fair play and substantial justice*[4]

If a plaintiff successfully demonstrates that the defendant sustained sufficient minimum contacts, jurisdiction can be overcome or enhanced by the notions of fair play and substantial justice. *ESAB II,* 34 F. Supp. 2d at 328. A presumption exists, however, that jurisdiction is reasonable and the defendant faces the burden to prove otherwise. *Burger King*, 471 U.S. at 477.

This inquiry involves a balancing test based on many factors, including, but not necessarily limited to: (1) the burden on Defendants, (2) the adjudicative interest of the forum state, (3) Plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution, and (5) the shared interests of the states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292. In the case at hand, the Court concludes the exercise of specific personal jurisdiction over Defendants would offend the notion of fair play and substantial justice.

First, Defendants face a huge burden should this case go to trial. Both Defendants are residents of Connecticut. To come and to bring witnesses to South Carolina would be burdensome

---

[4]The Court addresses these issues out of an abundance of caution.

in both time and cost.  Nevertheless, although the South Carolina courts may have an interest in hearing this case, this interest fails to surpass Defendants' right to due process.  Furthermore, Connecticut may equally share adjudicative interest since both Defendants are agents or employees of the CDC.

Moreover, because South Carolina follows the traditional *lex loci delicti* rule in tort actions, Connecticut law may control the question of Defendants' liability.  *See Gattis v. Chavez*, 413 F. Supp. 33, 35 (D.S.C. 1976) (holding that since defendant's alleged malpractice occurred in Georgia, the law of Georgia, not South Carolina, controlled liability); *see also Farwell v. Un*, 902 F.2d 282 (4th Cir. 1990) (stating that the law of alleged wrongful act, rather than place of suicide, governed claim against psychiatrist).

Since Plaintiff and many potential witnesses in this action reside in South Carolina, Plaintiff's interest to have this case tried in South Carolina is evident.  However, "interest alone does not outweigh all of the other combined factors." *Shyatt v. Univ. of Wyo.*, No. 8:98-1608-13, slip op. at 14 (D.S.C. June 29, 1998); *see Fed. Ins. Co. v. Lake Shore, Inc.*, 866 F.2d 654, 661 (4th Cir. 1989).  Therefore, the Court finds exercising personal jurisdiction over Defendants would be unjust and unfair.

  *B.*  *General Jurisdiction*

If a nonresident's contacts with the forum state are not directly related to the cause of action, a court may assert general jurisdiction if the defendant has an enduring relationship with the state. *ESAB I*, 126 F.3d at 623.  However, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction." *Id.* (internal citations omitted). Moreover, the defendant's activities with the forum state must be "continuous and systematic." *Id.*

(quoting *Helicopteros Nacionales*, 466 U.S. at 414-15 (1984)).  Furthermore, defendant's contacts with the state must comport with due process.

In the case at bar, Plaintiff's assertion of Defendants' continuous and systematic contacts is "in the context of probation transfers under the Interstate Compact and matters related to extradition of state prisoners."  (Pl's Opp'n Defs.' Mot. at 9.)  Plaintiff fails, however, to offer any evidence of other requested probation transfers by the CDC to South Carolina or any other systematic contacts.  Moreover, according to Defendant Lantz, "[a]t no time have I or my agency been a party to an Interstate Compact relating to probation."  (Aff. of Theresa Lantz ¶ 8.)[5]

As stated above, Plaintiff offers no evidence that Defendants had any contacts whatsoever with South Carolina.  Therefore, this Court finds insufficient contact existed between Defendants and the forum state to establish general jurisdiction.

   C.     *Plaintiff's Remaining Arguments*

The Court has reviewed Plaintiff's remaining arguments and finds them to be without merit.[6]

---

[5] Assuming without deciding that the CDC attempted to transfer Decedent's probation to South Carolina, this alone fails to institute the "continuous and systematic" contacts required to establish general jurisdiction over Defendants.

[6] The Court notes that Plaintiff is suing Defendants in their official and unofficial capacities under 42 U.S.C. § 1983 (2003).  In *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989), the Supreme Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."  Moreover, "Section 1983 . . . does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties."  *Id.* at 66.  Unless the State has waived immunity, the Eleventh Amendment bars such suits.  *Id.; Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474 n.5 (4th Cir 2005) (§ 1983 "does not authorize an action against [defendant] or the individual defendants in their official capacities.").

*D.     Plaintiff's Motion for Default Judgment*

Since this Court concludes insufficient contacts existed to establish either specific or general personal jurisdiction over Defendants, Plaintiff's motion for entry of default and/or default judgment must necessarily be denied.  *See Fed. Deposit Ins. Corp. v. Schaffer*, 731 F.2d 1134, 1135-36 (4th Cir. 1984) ("Absent effective service of process, a court is without jurisdiction to render a personal judgment against a defendant. . . . A judgment entered against a party over whom a court lacks personal jurisdiction is void and furnishes a ground for relief [from default]."); s*ee also Precision Etchings & Findings, Inc. v. LGP Gem, Ltd.*, 953 F.2d 21, 23 (1st Cir.1992) ( "A default judgment entered by a court which lacks jurisdiction over the person of the defendant is void, and may be set aside at any time." (internal citation omitted)).

## VIII.  CONCLUSION

In light of the foregoing analysis, the Court concludes that Plaintiff failed to establish that Defendants had sufficient contacts in South Carolina to permit personal jurisdiction.  Therefore, it is the judgment of this Court that the Defendants' motion to dismiss be **GRANTED** and Plaintiff's motion for default judgment will be **DENIED**.

**IT IS SO ORDERED**.

Signed this 31st day of August, 2005, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE